KANSAS PACIFIC RAILWAY CO. v. THOMAS J. ANDERSON.

ACCOUNT STATED, *Not Conclusively Shown; No Error.* A railway com-
pany brought an action against A., formerly its agent, on an account
stated. A. filed an answer containing a general denial. On the trial the
plaintiff read in evidence a letter of A. to the auditor of the company,
dated February 12, 1874, proposing to pay every dollar of the defalca-
tion of one B., to the amount of $7,582.11, if he had time, and stating
therein that his January report was short $5,042.07, and that the bal-
ance of $2,540.04 would have to be reported in his February account,
and then produced as a witness the auditor, one S., who testified that
the account sued on was furnished by him to A. on March 21, 1874; that
A. went out of office on February 14, 1874; that he met A. in regard to
the account three or four times; that the account included the whole of
February, 1874; that he saw the account in his possession, and that he
made no objection to it; that several other statements of account were
sent A. before and after March 21, 1874; that they were not all like the
one sued on; that those after March 21 were different, and that these
statements were given A. as matters of information. *Held,* That the stated
account was not conclusively established by the testimony, and therefore
not error for the district court to submit the question in the case to the
jury. And further, *held,* on return of a verdict by the jury for the defend-
ant A., and the rendition thereon of a judgment for costs in favor of A.,
this court will not set aside the judgment on the ground that the verdict
is contrary to the evidence.

## *Error from Shawnee District Court.*

ACTION on an account stated, brought by the *Kansas Pa-
cific Railway Company* against *T. J. Anderson.* The amount
claimed was $7,617.16, with interest from March 1, 1874.
The action was commenced February 10, 1875. To the pe-
tition, the defendant filed a general denial, and in a second
count of the answer set forth new matter as an additional
defense. On motion of the plaintiff, the court struck out the
second count, and the case was tried at the December Term,
1876, on the petition and the general denial, by the court and
a jury. The jury returned a verdict for the defendant, and
answered the questions submitted to them as follows:

1. " Did the plaintiff and defendant settle and agree upon
the condition of their accounts, and was an account stated

between the parties, as alleged in the petition? *Answer:* No.

2. "Did the defendant receive any of the money or funds sued for in this case? *Ans.:* No evidence to prove.

3. "Was Belford the agent of the defendant, or of the plaintiff? *Ans.:* Unknown to the jury.

4. "Did the defendant's duties, concerning moneys collected by Belford, commence until Belford had turned them over to him? *Ans.:* No evidence to prove.

5. "What was the scope of Anderson's agency? *Ans.:* Unknown."

Thereon a judgment was rendered in favor of said defendant for costs. The plaintiff excepted, and brings the case here.

*J. P. Usher,* and *Charles Monroe,* for plaintiff in error:

The court erred in not instructing the jury to find for plaintiff, as requested by plaintiff's counsel. Only one witness testified in the case, whose testimony was uncontradicted, and it must therefore be considered true. That being the case, the question whether the facts testified to by him proved a stated account, was one of law, for the court, which should have directed the jury to find for the plaintiff, in the amount claimed. This was the only verdict that could properly have been rendered in the case. (13 Cal. 427.) The facts having been admitted, everything in the case was for the court, and nothing for the jury.

Smith testified that he had charge of all of the accounts of the company plaintiff, including the account of moneys received and paid out by agents; that he presented to Anderson the account sued on, met him three or four times in regard to it, saw it in his hands, and that he made no objection to its correctness; that he had demanded payment of defendant several times, but that the account was not paid. This was ample proof that the account was stated, and the jury should have so found.

The instructions of the court plainly enough indicated that the legal construction of the letter in evidence was an

admission of the debt; and so it was, not the admission of a nominal debt, but a debt of great magnitude. The court instructed the jury that the burden of proof was upon the plaintiff to show that the defendant had recognized the account in evidence to be correct. If that position be the law, which is not admitted to the extent of the charge to the jury, the question is, what volume of proof is necessary to establish the affirmative upon that question? The law seems to be settled that if an account is furnished to a party claimed to be a debtor, if he makes no objection to it within a reasonable time, it is to be presumed that he owes the debt as stated. Yet he may show, it seems, excuse for not returning the account, or that he did not owe the debt. (18 N. Y., 285.) In other words, the fact that an account has been submitted, and has not been objected to, does not work an absolute estoppel from showing its injustice. In this case there was no attempt on the part of defendant, although present, to prove that the account which had been forwarded to him was in any respect erroneous. There was no evidence, or suggestion even, that he did not owe the amount. The plaintiff offered to show that he was notified on two or three occasions of the receipt of some small balances that would slightly vary the account. That was objected to by the defendant, and the evidence was ruled out.

Plaintiff did prove by its auditor, whose business it was to settle this account, that after he sent the account to Anderson, he saw it in his hands, and they talked about the account and of settling it in some way, and defendant made no objection to it. The plaintiff also offered to prove that as to one means of settling it he offered to make a mortgage of his property, which evidence was objected to and rejected by the court. It is not to be supposed that the court would have so ruled if it had been an open question in the mind of the court whether it had not been already abundantly proved that defendant had assented to the statement of his account. If the proof was thus uncontradicted, then the verdict was wrong. If it had not already been conclusively proved, the

court erred in rejecting the testimony. The evidence being so conclusive upon that subject, in connection with the rejection of the testimony offered, it is submitted that the court ought not to have instructed the jury in respect to the burden of proof upon that subject.

It all comes to this: was the jury justified in finding that the witness Smith did not testify to the truth? He was a witness whose character was not assailed, and of undoubted capacity to testify what the facts were in this case. The jury had no right to repudiate his testimony. If he testified truly as to seeing the paper in defendant's hands, as to meeting him on several occasions, as to the payment of the money, as to defendant making no objections to it, the case, within the rule of law laid down by the court, was fully established. In courts of justice, corporations have equal rights with individuals. Juries have no right, from caprice, passion or prejudice, to disregard the testimony of the witnesses of unpopular parties. It has often been decided in such cases, that their verdicts cannot be sustained. (49 Barb. 583; 29 Ill. 161; 41 Tex. 355.)

*G. C. Clemens*, for defendant in error:

In all the evidence, where is anything tending to prove a stated account? Not in Anderson's letter, for though he says he proposes paying every dollar of Belford's defalcation, he does not say to whom, nor does it appear that plaintiff had any interest in whether that defalcation was paid or not; and the proposal to pay was not absolute, but coupled with a condition—"but I must have time." No further agreement appears; we are not informed that the conditional offer was accepted. This was not evidence of a stated account, for the admission must be absolute and unqualified. Where, then, was the evidence of a stated account? Not in the statement handed to defendant, for without the aid of extrinsic testimony, which was not given, that statement conveys no meaning. There are sundry "additions," and there are certain

"deductions" of a cabalistic character, which, no doubt, meant something to the expert gentleman who made out this document, but which are as unintelligible as cuneiform inscriptions to the uninitiated. This statement results in a deduction no clearer than the premises whence it is drawn—"Short in cash, $7,617.16." What was meant by "short in cash?" The jury were not told; and is it to be presumed that they knew? Did these words convey to Anderson the meaning that he owed the plaintiff that amount? In what sense did the parties understand those words? No explanation was given. Unless we can say that those words meant that defendant was *indebted* to that amount, no implication can arise from his silence. Unusual expressions, the nomenclature of trade, commerce and art, must be explained to courts and juries by competent evidence, and when not thus explained they are meaningless, and there is a failure of proof. Without any evidence explaining the meaning of "Short in cash," could the court or jury say what those words meant? Yet their meaning must be ascertained before any inference can be drawn from defendant's silence. The questions propounded to the jury and answered, were fair tests of the obscure character of this evidence.

Does the silence of a party upon receiving a statement setting forth an alleged indebtedness constitute a stated account? Must there not be something more? The fallacy of plaintiff's attorneys is in looking upon an account stated as in the nature of a promissory note or a due-bill; while as a matter of law a stated account is nothing more than an amount fixed, a balance struck. The plaintiff having first proved transactions between the parties, and an indebtedness, then offers the account stated to prove the agreed amount of that indebtedness. The only legal efficacy of an account stated is, that it finds the amount of an asserted indebtedness; but there must be proof of an indebtedness, *aliunde*. Before a party can be bound by his silence, it must be shown that he was silent under circumstances which required him to speak.

There must be proof of an actual debt in an action upon an account stated. (*Whitehead v. Howard*, 2 Brod. & B. 377; *Tucker v. Barrow*, 7 B. & C. 624.)

But when the balance of cash "short" was at length certainly ascertained, what were the consequences? Upon whom rested the blame? Who was responsible for the deficiency? There is no intimation that Anderson had used or misapplied the money: what caused the deficiency? Who took the money? The only light we can obtain is from defendant's letter, which speaks of "Belford's" defalcation in the sum of $7,582.11. The shortage in cash was caused, then, as nearly as we can learn, by the defalcation of Belford. Did the defalcation of Belford create a debt against Anderson? If it did, then there would be a basis for a stated account if the other facts were proved; if not, then there could be no stated account, for there was no indebtedness.

Having shown this shortage to have arisen from Belford's acts, we must inquire whether Anderson was responsible for what Belford did? Was he Anderson's agent or the company's? From defendant's letter it appears that *Belford was in the pay of the company*, for he sends an order for his pay, which order defendant sends to the company, to be credited to his account at the agency. Belford then being employed by the company and not by the defendant, Anderson was not indebted for his defalcation. But the jury have said that there was *no* evidence upon the subject of either Anderson's or Belford's agency.

But this statement was not a statement of the account between the parties. Anderson, no longer agent, had no access to the books, and Smith says these statements were sent him "as matter of information," not as claims of indebtedness. But this statement does not purport to be a statement of the account; on the contrary, it is but a summary of "additions" to and "deductions" from an account. It was but a purported correction or assertion of errors in an account previously stated, and not the account itself in which those errors were asserted to exist; it was a mere supplementary

4—23 KAS.

statement containing additional items of debit and credit, and a summary statement showing how the balance would stand with those additional debits and credits figured in. The account to which this supplement related, was not produced for the enlightenment of the jury.

The party's silence is not conclusive: that depends upon circumstances; and the inference from that silence in the light of circumstances is to be drawn by the jury. In drawing that inference, it was proper for them to consider that Anderson had been removed from his agency, and that all the books and vouchers were in the hands of the company.

The opinion of the court was delivered by

HORTON, C. J.: The main question in this case is, whether an account stated between the parties as alleged in the petition was conclusively established by the testimony. After the plaintiff rested, the defendant announced he would offer no evidence. Thereupon the plaintiff requested the court to instruct the jury to find for the plaintiff the amount prayed for in the petition. The court refused to give the instruction, and counsel urge that such refusal was material error, and they also allege that the verdict was contrary to the evidence. Upon the trial, the plaintiff read in evidence a letter of the defendant, of date of February 12, 1874, to its auditor, one S. T. Smith, stating that the total amount of Belford's defalcations, as figured by Mr. Fleming and himself, was $7,582.11; that in his January report, sent by Mr. F., he reported as short, $5,042.07; that the balance, $2,540.04, would have to be reported in his February account; that it was pretty rough on him, but he proposed paying every dollar, but that he must have time. The letter further contained a statement of his own pecuniary condition, and the efforts on his part to obtain something out of the property of Belford. Smith was then produced as a witness, and testified:

"I was auditor of the Kansas Pacific railway company in 1873, 1874 and 1875, and have been till now, and as

. such have had during that time charge of all the accounts of the company at stations, or wherever they may be. A part of my duties is to keep account of all moneys received and paid out by agents and officers. T. J. Anderson was agent of the company at Topeka, in 1874, till sometime in March. [A paper is here shown witness.] This is a copy of statement of freight account at that station on the last day of February, 1874. I met Mr. Anderson in regard to that account three or four times at least. A copy of it, except as to heading, was furnished him. I saw it in his possession afterward. It was a copy, all but the heading; the figures were the same, and the balance was the same. He made no objection to it. It was the same thing as the account attached to the petition, stated in a different way, but the passenger account was omitted. Both balances are the same. I had interviews with Anderson from the 14th of February to the middle of March. This was the adjusted balance as ascertained at that time. It has never been paid."

Plaintiff then read the account in evidence, which purported to be the monthly freight account of the defendant for February, 1874, inclusive of February 27th. A summary of it is as follows:

| | |
|---|---|
| Balance as reported................................................ | $9,127 15 |
| Amount added........................................................ | 425 00 |
| Total.................................................................... | $9,552 15 |
| Amount deducted.................................................... | 45 20 |
| Balance, as corrected............................................. | $9,506 95 |
| Less amount of unpaid bills...................................... | 1,889 79 |
| Short in cash........................................................ | $7,617 16 |

On cross-examination he testified:

" This account was made up from my records by my letter clerk. Clerks made up the books. I know nothing except from the books. Sent statement to Anderson 21st of March, 1874. I saw it with him afterward, or rather the paper that this was copied from. Think I sent several after and before this; not all like this one; subsequent ones were different. Anderson not agent 21st of March; went out of office 14th of February. He had no control after that time. I don't know what he had to do with making these accounts; they were given to him as matter of information. Don't know that letters were sent with subsequent accounts."

Here the testimony closed. Upon this testimony we do

not perceive any error in the action of the court in refusing·
to instruct the jury to return a verdict peremptorily for plain-
tiff, and in directing them to decide from the evidence,
whether previous to the commencement of the action the
defendant was indebted to the plaintiff on an account stated
between the plaintiff and the defendant, or between the de-
fendant and an agent of the plaintiff, nor for informing them
that they were the exclusive judges of the evidence, of its
weight, and of the credibility of the witness. There was
nothing in the letter of the defendant establishing a stated
account. It was dated before the defendant ceased to be
agent for the plaintiff, and did not agree in amount with the
alleged stated account. The proposal to pay was coupled
with the condition: "*But I must have time.*" Again, while
the defendant therein proposed to pay Belford's defalcation,
such proposition is a mere volunteer offer, as it nowhere
appears in the letter or by any other evidence that Ander-
son was legally bound for Belford's conduct. The intima-
tion in the letter that Belford was an employé of the plaintiff
carries with it the presumption that Anderson was not liable
for the defalcation, and that his promise to pay the same was
*nudum pactum.* This view leaves the claim of the plaintiff
to rest solely on the testimony of Smith. On· this point
counsel argue that the jury were not justified in finding that
he did not testify to the truth. They say: "He was a wit-
ness whose character was not assailed, and of undoubted capa-
city to testify what the facts were, and that his testimony
ought not to have been repudiated." Conceding for the argu-
ment that a stated account between the parties was proved,
within the rule of law laid down by the court, if the evidence
of Smith was believed by the jury, the question at once arises,
were the jury bound to accept the statements of this witness
as absolute verity?

In *Callison v. Smith*, 20 Kas. 36, Mr. Justice Brewer,
speaking for this court, said: "We cannot agree with the
learned counsel, that because a witness testifies to a matter, it
must be believed unless there be testimony directly impeach-

ing the witness or contradicting the testimony. The very matter stated by the witness may be too improbable to be believed by any intelligent person, and its mere statement is its own refutation, without a word of impeaching or contradictory testimony."

In the late case of *Molitor v. Robinson,* 40 Mich., 201, 202, Judge Cooley said that the plaintiff "testified to purchasing the property in controversy in good faith and paying the purchase price in money. There being no distinct evidence to the contrary, plaintiff claimed that there was nothing on this branch of the case to leave to the jury; in other words, that good faith was conclusively made out by this evidence, thus left to stand uncontradicted. The circuit judge, however, held that the question must be submitted to the jury, and in this he was correct. The jury were under no obligation to believe the plaintiff's statement, and unless it convinced their reason they were entirely at liberty to reject it altogether. They must take the evidence with all its surroundings; and often other things which go to characterize a transaction are more convincing than positive evidence of any single witness, especially if an interested witness." This case is not perhaps as strong an illustration of the right of a jury to disregard the testimony of witnesses as *Callison v. Smith* and *Molitor v. Robinson,* supra, and yet the principle announced in these cases is, to some degree, applicable here. As a general rule it belongs to a jury, in considering the weight of evidence, to pass upon the credit due to a witness. In what cases, if any, the uncontradicted and unimpeached oral testimony of a witness cannot be discredited by a jury is a matter of great difficulty to determine. Nor need we determine the question in this case. There was certainly enough evidence presented to raise a serious doubt as to the action of the defendant in the premises. Unless the evidence showed clearly that he understood that the account presented was a final adjustment of the respective demands between him and the plaintiff, a jury would hardly be compelled, under the most rigorous rule of implicitly accepting testimony, to find

an adjustment between the parties. "There is no arbitrary rule of law which renders an omission to object in a given time equivalent to an actual agreement or consent to the correctness of the account rendered; but it is merely competent evidence, subject to be rebutted by circumstances from which counter inferences may be drawn." (*Lockwood v. Thorne*, 18 N. Y. 285.) No attempt was made on the trial to show any indebtedness existing between plaintiff and defendant prior to the alleged account being stated, outside of the letter of the defendant. The account furnished to defendant contained charges against him for all the month of February, 1874, yet Smith testified, "he went out of office on February 14th." Again, the testimony was to the effect that the account sued on was sent to Anderson March 21st, and that several other statements or accounts were sent him after and before this, and that the subsequent ones were different; further, that these statements or accounts were given him as matters of information. Under these circumstances, why the officers of the plaintiff selected the statement furnished on March 21st as the adjusted balance, it is quite difficult to tell. The natural inference would be, that the later statements would be the adjusted balance, rather than the earlier ones. No promise to pay was testified to by Smith, and to hold the testimony concerning the omission of defendant to object to one of many statements furnished him for information as a conclusive admission of the correctness of his account which the jury were bound to accept, is carrying out the doctrine of inferences from silence further than we are willing to approve. Counter inferences to the testimony of omission to object appeared in the testimony of the witness, and these were proper considerations for the jury. We think the district judge was correct in submitting the case to the jury, and as their verdict has received the sanction of the trial court, we do not feel justified in setting the judgment aside.

We have considered all the other questions presented in the argument of counsel, but do not think it necessary to comment further than to remark that we perceive no mate-

rial error in the rulings and instructions of the court, and therefore the judgment of the district court will be affirmed.

All the Justices concurring.